**Department of Homeland Security**
U.S. Citizenship and Immigration Services

## Record of Determination/Credible Fear Worksheet

| SND | ZLA | A074 363 988 | MEZA CERVANTES |
|---|---|---|---|
| District Office Code | Asylum Office Code | Alien's File Number | Alien's Last/Family Name |
| COKER | WOLE | MEXICO | |
| Asylum Officer's Last Name | Asylum Officer's First Name | Alien's Nationality | |

*All statements in italics must be read to the applicant*

### SECTION I: INTERVIEW PREPARATION

1.1　01/06/08
　　Date of arrival [MM/DD/YY]

1.2　SND/SYS
　　Port of arrival

1.3　01/07/08
　　Date of detention [MM/DD/YY]

1.4　CCA, San Diego, CA
　　Place of detention

1.5　01/15/08
　　Date of AO orientation [MM/DD/YY]

1.6　FILE RECEIVED FROM DRO ON 01/14/08
　　If orientation more than one week from date of detention, explain delay

1.7　01/15/08
　　Date of interview [MM/DD/YY]

1.8　SND
　　Interview site

1.9　[X] Applicant received and signed **Form M-444** and relevant *pro bono* list on　01/07/08
　　Date signed [MM/DD/YY]

1.10　Does applicant have consultant(s)?　[ ] Yes　[X] No

1.11　If yes, consultant(s) name, address, telephone number and relationship to applicant

1.12　Persons present at the interview (check which apply)
　1.13　[ ] Consultant(s)
　1.14　[ ] Other(s), list:
　1.15　[X] No one other than applicant and asylum officer

1.16　Language used by applicant in interview: ENGLISH

1.17　_____　[ ] Yes [ ] No　10:53AM　12:00PM
　　Interpreter Service, Interpreter ID Number.　Interpreter Has Forms　Time Started　Time Ended

1.18　_____　[ ] Yes [ ] No
　　Interpreter Service, Interpreter ID Number.　Interpreter Has Forms　Time Started　Time Ended

1.19　_____　[ ] Yes [ ] No
　　Interpreter Service, Interpreter ID Number.　Interpreter Has Forms　Time Started　Time Ended

1.20　[ ] Interpreter was not changed during the interview
1.21　[ ] Interpreter was changed during the interview for the following reason(s):
　1.22　[ ] Applicant requested a female interpreter replace a male interpreter, or vice versa
　1.23　[ ] Applicant found interpreter was not competent　1.24　[ ] Applicant found interpreter was not neutral
　1.25　[ ] Officer found interpreter was not competent　1.26　[ ] Officer found interpreter was not neutral
　1.27　[ ] Bad telephone connection
1.28　[X] Asylum officer read the following paragraph to the applicant at the beginning of the interview:

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today may be used in deciding your claim and in any future immigration proceedings. It is important that we understand each other. If at any time I make a statement you do not understand, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

Alien's File Number: A074 363 988

**SECTION II:**     **BIOGRAPHIC INFORMATION**

2.1 MEZA CERVANTES
Last Name/Family Name [ALL CAPS]

2.2 JAIME
First Name

2.3 ERIC
Middle Name

2.4 02/18/73
Date of birth [MM/DD/YY]

2.5 Gender ☒ Male ☐ Female

2.6
Other names and dates of birth used

2.7 MEXICO
Country of birth

2.8 MEXICO
Country (countries) of citizenship (list all)

2.9 TIJUANA, MEXICO
Address prior to coming to the U.S. (List Address, City/Town, Province, State, Department and Country).

2.10 HISPANIC
Applicant's race or ethnicity

2.11 CHRISTIAN
Applicant's religion

2.12 ENGLISH; SPANISH
All languages spoken by applicant

2.13 Marital status: ☐ Single ☒ Married ☐ Legally separated ☐ Divorced ☐ Widowed
2.14 Did spouse arrive with applicant? ☐ Yes ☒ No
2.15 Is spouse included in applicant's claim? ☐ Yes ☒ No
2.16 If currently married (including common law marriage) list spouse's name, citizenship, and present location (if with applicant, provide A-Number): SUSAN MEZA; USC, USA

2.17 Children: ☒ Yes ☐ No
2.18 List any children (Use the continuation section to list any additional children):

| Date of birth (MM/DD/YY) | Name | Citizenship | Present location (if w/PA, list A-Numbers) | Did child arrive with PA? | | Is child included in PA's claim? | |
|---|---|---|---|---|---|---|---|
| | | | | Yes | No | Yes | No |
| 07/27/97 | RICHARD MEZA | USC | USA | ☐ | ☒ | ☐ | ☒ |
| 08/30/99 | ENRIQUE MEZA | USC | USA | ☐ | ☒ | ☐ | ☒ |
| | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ |
| | | | | ☐ | ☐ | ☐ | ☐ |

Form I-870 (Rev. 11/21/03) N Page 2

Exhibit A

Alien's File Number: A074 363 988

2.19 Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication(s) that a medical condition exists? If YES, answer questions 2.20 and 2.21 and explain below.   ☐ Yes   ☒ No

2.20 Has applicant notified the facility of medical condition?   ☐ Yes   ☐ No
2.21 Does applicant claim that the medical condition relates to torture?   ☐ Yes   ☐ No
2.22 Does the applicant have a relative, sponsor or other community ties, including spouse or child already listed above?   ☒ Yes   ☐ No
2.23 If YES, provide information on relative or sponsor (use continuation section, if necessary):

JESUS MEZA                                FATHER
Name                                      Relationship

SAN DIEGO, CA                             (619) 425 7212
Address                                   Telephone Number

☐ Citizen   ☒ Legal Permanent Resident   ☐ Other

**SECTION III:**  **CREDIBLE FEAR INTERVIEW**

The following notes are not a verbatim transcript of this interview.
These notes are recorded to assist the individual officer in making a credible fear determination
and the supervisory asylum officer in reviewing the determination.
There may be areas of the individual's claim that were not explored or documented for purposes of this threshold screening.

The asylum officer must elicit sufficient information related to both credible fear of persecution and credible fear of torture to determine whether the applicant meets the threshold screening. Even if the asylum officer determines in the course of the interview that the applicant has a credible fear of persecution, the asylum officer must still elicit any additional information relevant to a fear of torture. Asylum officers are to ask the following questions and may use the continuation sheet if additional space is required. If the applicant replies YES to any question, the asylum officer must ask follow-up questions to elicit sufficient details about the claim in order to make a credible fear determination.

3.1  a  Have you or any member of your family ever been mistreated or threatened by anyone in any country to which you may be returned?
     ☒ Yes   ☐ No

Form I-870 (Rev. 11/21/03) N Page 3

Exhibit A

Alien's File Number:    A074 363 988

Q. Have you ever been threatened or harmed in Mexico?
A. Yes
Q. When?
A. January 4, 2008
Q. By whom?
A. By the Mexican mafia
Q. Why did they threaten you?
A. I am a dropout.
Q. What does that mean?
A. I used to belong to a prison gang called the Southsiders and that is part of the Mexican mafia. When I was there in Mexico they shot at me and that was on January the 4th 2008.
Q. When did you join the Southsiders?
A. I grew up around them.
Q. They are a street gang?
A. Yeah, it is a street gang and it belongs to the Mexican mafia. It's part of it.
Q. When did you join?
A. You just grow into it. Its not like a certain date you join.
Q. You've been a member all your life?
A. Not all my life. I'd say since my youth.
Q. And what did you do with this gang?
A. We basically just followed orders.
Q. Whose orders?
A. There are different people in charge. Whoever is out of prison at the time or whatever.
Q. What were you ordered to do?
A. Basically sell drugs. Different things, whatever they need done and stuff.
Q. Were you ordered to kill people?
A. They tried to have me kill someone that's why I dropped out.
Q. Have you ever killed anyone?
A. No, I was charged for manslaughter though.
Q. Manslaughter, doesn't that mean someone died?
A. Yes. I was there and I went to prison for it.
Q. Whose death led to that manslaughter charge?
A. I can't remember his name right now. But there are records.
Q. How did this death occur?
A. It happened in a drug house. It was accidental.
Q. When were you ordered to kill someone?
A. While in prison.
Q. For the manslaughter charge?
A. Yes.
Q. When did the order occur?
A. About August 2003.
Q. Who gave the order?
A. Ricky Chavez.
Q. Who's he?
A. A member of the Mexican Mafia.
Q. Was he serving time with you at the prison?
A. Yes
Q. Who was the order for?
A. I just remember his nickname was "Sleepy"

Alien's File Number: A074 363 988

Q. Why was the order given?
A. I was never told. We were never told why.
Q. What did you do when you received the order?
A. I refused.
Q. Why?
A. I didn't want to be a part of that.
Q. Why not?
A. I wanted to get out of prison and that would have had me in for life if I had done it.
Q. What happened when you refused?
A. I was forced to go into protective custody.
Q. How long did you receive protective custody?
A. The remaining time I was in prison. For four years.
Q. How were you put into protective custody?
A. You have to go before a prison board and tell them what the problem is. There has to be evidence that your life is in danger. I had to be interviewed.
Q. When were you released from prison?
A. July 20, 2007.
Q. Where did you go?
A. To Mexico.
Q. Did anything happen?
A. Yes. This incident now.
Q. So between July 20, 2007 and January 4, 2008 nothing happened?
A. I was forced to move to a different area in that period. People were asking questions about me in that neighborhood so I had to move.
Q. Who was asking questions?
A. People there who are into gangs and stuff.
Q. What happened January 4, 2008?
A. Some members of the Mafia moved next door to my house to keep an eye on me.
Q. How did they know where you were staying?
A. I have no idea.
Q. Then what happened?
A. They were peeking through my windows at first, different people coming and going out of the neighbor's house. They were following me until someone realized who I was. I was hired for a job on January 3rd 2008 and then someone saw my face and recognized me. Then they tried to get in through my window and that's when I knew they wanted to get me. I called my family here and they came there and took me to a hotel until we could figure out where I should go. The Mafia tried to get me at the hotel. I ran and they shot at me. I ran to a store with cameras and the Mafia was driving around the store. I told the lady at the store what was happening and she called the police. I told the police what happened but was unable to provide any names and they said I had to leave the premises. The people that shot at me came closer and the police told them what I said. I refused to leave the premises and got arrested by the police and taken to jail. I was resisting going into the cell and the police began forcing me to get in. My parents came and arranged for bail. When I left the police station I went toward the border and the Mafia began shooting at me. A bullet grazed me. I ran to the border station and asked for asylum.
Q. Who afraid of in Mexico?
A. The Mafia. The police.
Q. Why are you afraid of the police?
A. Because they work with the Mafia.
Q. What makes you say that?
A. When I was arrested in jail a member of the Mexican Mafia came and told the policeman who arrested me

Form I-870 (Rev. 11/21/05) N Page 5

Exhibit A

Alien's File Number:    A074 363 988

To give a message to my cellmates that they should harm me. The officer delivered the message and when I was put in the cell the cellmates beat me up. The police moved me to another cell and they beat me there too. Then when the police came I was shouting that they should help me but instead they took me out and beat me themselves.

Q. Why did they do that?
A. I have no idea. I was asking for help.
Q. Why do you think they beat you up?
A. Because the police work with the Mafia.
Q. The Mexican police are corrupt and work with criminals?
A. Yes
Q. Where do you get that?
A. Because of what I've seen.
Q. What have you seen?
A. I've seen them talk with known criminals outside the house I was staying. Eat with them and drink with them. I've seen drugs being sold around them without them arresting the drug dealers.
Q. You think the Mexican mafia could use the police to get to you?
A. Yes
Q. Do you consider the Southsiders a criminal organization?
A. Yes
Q. Why?
A. They're part of the Mexican Mafia.
Q. So?
A. They commit murders, sell drugs and engage in crime. They kidnap people.
Q. And you also engaged in these criminal activities?
A. When I was a member, yes.
Q. Do you consider the Mexican Mafia a criminal organization?
A. Yes

Is there any other reason you are afraid to return to Mexico? No
Ever been threatened or harmed in Mexico because of your race? No
Ever been threatened or harmed because of your religion? No
Ever been threatened or harmed because of your nationality? No
Ever been threatened or harmed because of your political opinion? No
Are you a member of any ethnic or indigenous group? No.

b. Do you have any reason to fear harm from anyone in any country to which you may be returned?
☒ Yes   ☐ No

I am afraid of the Mexican Mafia and the police.

c. If YES to questions a and/or b, was it or is it because of any of the following reasons? (Check each of the following boxes that apply)
☐ Race   ☐ Religion   ☐ Nationality   ☐ Membership in a particular social group   ☐ Political Opinion

NO NEXUS

3.2   ☒ At the conclusion of the interview, the asylum officer must read the following to applicant:

Form I-870 (Rev. 11/21/03) N Page 6


Exhibit A

Alien's File Number: A074 363 988

If the Department of Homeland Security determines you have a credible fear of persecution or torture, your case will be referred to an immigration court, where you will be allowed to seek asylum or withholding of removal based on fear of persecution or withholding of removal under the Convention Against Torture. The Field Office Director in charge of this detention facility will also consider whether you may be released from detention while you are preparing for your hearing. If the asylum officer determines that you do not have a credible fear of persecution or torture, you may ask an Immigration Judge to review the decision. If you are found not to have a credible fear of persecution or torture and you do not request review, you **may be removed from the United States** as soon as travel arrangements can be made. Do you have any questions?

No

3.5  ☒ At the conclusion of the interview, the asylum officer must read a summary of the claim, consisting of the responses to Questions 3.1 a-c and information recorded in the Additional Information/Continuation section, to applicant.

****Typed Question and Answer (Q&A) interview notes and a summary and analysis of the claim must be attached to this form for all negative credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issues and that the applicant was given every opportunity to establish a credible fear.

## SECTION IV:         CREDIBLE FEAR FINDINGS

**A.    Credible Fear Determination:**

Credibility

4.1  ☒ There is a significant possibility that the assertions underlying the applicant's claim could be found credible in a full asylum or withholding of removal hearing.

4.2  ☐ Applicant found **not** credible because (check boxes 4.3-4.5, which apply):

    4.3  ☐ Testimony was internally inconsistent on material issues.

    4.4  ☐ Testimony lacked sufficient detail on material issues.

    4.5  ☐ Testimony was not consistent with country conditions on material issues.

Nexus

4.6 ☐ Race    4.7 ☐ Religion    4.8 ☐ Nationality    4.9 ☐ Membership in a Particular Social Group
(Define the social group):

4.10 ☐ Political Opinion    4.11 ☐ Coercive Family Planning [CFP]    4.12 ☒ No Nexus

Credible Fear Finding

4.13 ☐ Credible fear of **persecution** established.

OR

4.14 ☒ Credible fear of **torture** established.

OR

4.15 ☐ Credible fear of persecution NOT established and there is not a significant possibility that the applicant could establish eligibility for withholding of removal or deferral of removal under the Convention against Torture.

**B.    Possible Bars:**

4.16 ☒ Applicant could be subject to a bar(s) to asylum or withholding of removal (check the box(es) that applies and explain on the continuation sheet).

    4.17 ☐ Particularly Serious Crime    4.18 ☐ Security Risk    4.19 ☒ Aggravated Felon

    4.20 ☐ Persecutor    4.21 ☐ Terrorist    4.22 ☐ Firmly Resettled

    4.23 ☒ Serious Non-Political Crime Outside the United States

4.24 ☐ Applicant does not appear to be subject to a bar(s) to asylum or withholding of removal.

**C.    Identity:**

4.25 ☒ Applicant's identity was determined with a reasonable degree of certainty (check the box(es) that applies):

Alien's File Number: A074 363 988

4.26 ☒ Applicant's own credible statements. (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty).

4.27 ☐ Passport which appears to be authentic.

4.28 ☐ Other evidence presented by applicant or in applicant's file (List):

4.29 ☐ Applicant's identity was not determined with a reasonable degree of certainty. (Explain on the continuation sheet.)

**SECTION V:     ASYLUM OFFICER / SUPERVISOR NAMES AND SIGNATURES**

| 5.1 | WOLF COKER ZLA 243 Asylum officer name and ID CODE (print) | 5.2 | N Coker — Asylum officer's signature | 5.3 | 01/15/08 Decision date |
| 5.4 | MARK FARFAGLIA ZLA 179 Supervisory asylum officer name | 5.5 | M. Farfaglia SAO — Supervisor's signature | 5.6 | 1/16/08 Date supervisor approved decision |

## ADDITIONAL INFORMATION/CONTINUATION

Q. Ever lived in any other country besides Mexico?
A. Yes, I lived in the US since I was 6 years old until last year.

Ever been arrested? Yes

Q. How many times?
A. Four or five times.

Q. What for?
A. I was a juvenile when I was arrested so I can't remember in what order the arrests came. Possession of stolen property, public drunkenness, theft of a vehicle, and my manslaughter charge.

Q. How long incarcerated for the manslaughter?
A. Ten years.

Q. You served ten years?
A. Yes

Member of a terrorist group? No

Ever supported a terrorist organization or group financially or otherwise? No

Ever harmed anyone for any reason? Other than my manslaughter charge, no.

Ever served in the military? No

Q: Would the Mexican Government harm you if you returned?
A. I believe the police would harm me.

Q. Would the harm you fear be carried out with the support or acquiescence of the Mexican Government or any governmental official?

Form I-870 (Rev 11/21/03) N Page 8

Alien's File Number:                                                      A074 363 988

A. Yes

Q: Do you fear harm from anyone not in the government but in some way connected with the government?

A. Yes

SUMMARY:

The applicant testified that the Southsiders gang was prevalent in his neighborhood and that he had been a member since his youth. He stated that the Southsiders gang is part of the Mexican Mafia and that the latter gives orders and instructions to his gang. Applicant considers both the Southsiders gang and the Mexican Mafia to be criminal organizations because they engage in murder, drug trafficking and other criminal activities. In August 2003 while incarcerated on a ten-year sentence for manslaughter, a member of the Mexican Mafia ordered applicant to kill a fellow inmate but he refused because he knew that his sentence would be increased to a life sentence and he wanted to get out of jail. Applicant requested and received protective custody from the prison board because he feared that his life was in danger for refusing to execute and order. He was placed in protective custody until he was released upon completion of his sentence in July 2007 when he returned to Mexico. Applicant had to change homes because gang members in his neighborhood were beginning to ask questions about him. Members of the Mexican Mafia moved into the house next to his and seemed to be keeping an eye on him. He noticed they were friendly with the police, who eat and drank with them and did not arrest drug dealers openly plying their trade. Applicant stated that on January 4, 2008 as he left his house to start a job and one of the Mafia members recognized him and they tried to break into his house to kill him. He was able to relocate to a hotel but they followed him there and as he ran away they fired shots at him. He ran into a store with surveillance cameras and told the lady what was happening and she called the police. When the police arrived applicant explained the situation to the policeman but he told the mafia members who were still waiting outside what applicant was accusing them of and then ordered applicant to leave the premises. Fearing that he would be killed, applicant refused to leave and the police arrested him. A Mafia member came to the station and told the arresting officer to tell applicant's inmates in the cell to beat him up and the officer delivered the message. Applicant was attacked and beaten in two separate cells then removed and beaten by the police when he refused to be put into a third cell. Applicant was released on bail and headed for the San Ysidro border but members of the Mafia shot at him as he made his way there. Applicant fears that if he returns the Mexican Mafia and the police would harm him.

ANALYSIS:

To be eligible to pursue an asylum or withholding of removal claim in a full hearing, an applicant must establish a credible fear of persecution or torture to his country of citizenship. The applicant has established a significant possibility that his claim could be found credible in a full asylum/withholding hearing but has failed to establish a credible fear of persecution on account of any of the five grounds to asylum. Applicant testified that he would be harmed if he returns to Mexico but the harm he fears would not occur based on any of the five protected grounds to asylum. Applicant stated that the reason he would be harmed is because he refused to follow an order to commit murder issued by the Mexican Mafia, the organization that controls the Southsiders gang of which he was a member. By refusing to carry out that order applicant "dropped out" of the gang and put his life is in danger. This harm applicant fears does not relate to any of the five protected grounds to asylum. Furthermore, no Particular Social Group (PSG) classification appears to be viable in this case because it would not satisfy all prongs of Matter of C-A-. The Southsiders gang appears to be a group defined by criminal activity or association, past or present according to applicant's own testimony. Applicant indicates that the Southsiders gang is a part of the notorious Mexican Mafia and that Southsiders gang members, applicant included, carried out activities in furtherance of the Mexican Mafia agenda. These activities included murder, drug trafficking and kidnapping. Thus, with the apparent criminal association, past and present, of the Southsiders/Mexican Mafia considered, the harm applicant fears is not based on any of the five protected grounds to asylum.

Form I-870 (Rev. 11/21/03) N Page 9

Exhibit A

Alien's File Number:    A074 363 988

However, applicant has established a credible fear of torture if he returns to Mexico. Applicant testified that at the behest of the Mexican Mafia the police beat him whilst he was in their custody. He stated that he fears that the Mafia would use the police to harm him because the police are corrupt and friendly with members of the Mafia. Applicant observed police officers eat and drink with Mafia members in his neighborhood and allow drug dealers to openly deal drugs without being arrested. He also witnessed a Mafia member give instructions to a police officer to have applicant beaten by his cellmates and that officer carried out those instructions and applicant was beaten by both his cellmates and the police. Country conditions reports show that [P]olice corruption was a problem. Police have been involved in kidnappings, armed robbery, and extortion as well as protection of criminals and drug traffickers. From January to July, in Mexico City alone, 140 policemen were charged for various crimes, compared with 502 in 2003. In April, the Governor of Morelos dismissed all 552 state policemen after the arrest of two top officers for allegedly protecting drug dealers. See *Country Reports on Human Rights Practices 2004 – Mexico*, Bureau of Democracy, Human Rights and Labor, March 31, 2005, page 2444 at 2449.

Thus applicant has established a significant possibility that he could establish eligibility for withholding of removal or deferral of removal under Article 3 of the Convention Against Torture.

**POSSIBLE BAR**

Applicant might be subject to the Aggravated Felon bar to Asylum or Withholding of Removal. Applicant testified that he was convicted of Manslaughter and served ten years in a US prison. The immigration judge might find that conviction to be an aggravated felony conviction in a full asylum or withholding of removal hearing. (INA sec. 101(a)(43)(F)) Additionally, the applicant admitted to engaging in criminal activity with the "Southsiders" gang while in Mexico. Thus there is a significant possibility the "committed serious non-political crime outside the U.S." might apply.